UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CASE NO. 2:21-CV-00105-DLB-EBA

CHRISTY BECKERICH, ET AL.                                      PLAINTIFFS

vs.

SAINT ELIZBETH MEDICAL CENTER, INC., ET AL.                   DEFENDANTS

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE

Defendants, Saint Elizabeth Medical Center, Inc. ("St. Elizabeth") and Summit Medical Group, Inc. d/b/a St. Elizabeth Physicians ("SEP"), by and through counsel, hereby state as follows for their Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint With Prejudice.

## I.      INTRODUCTION

In a recent Rule 8 case, the Sixth Circuit explained that neither the district court nor the defendants should be forced to fish a gold coin from a bucket of mud.  Despite this Court's reminder to Plaintiffs that Rule 8 applies, the Court and the Defendants once again find themselves fishing for the putative gold coin upon which Plaintiffs seek extraordinary injunctive relief. Having completed this task, Defendants demonstrate below why there are no gold coins in Plaintiffs' bucket of mud—just 23 worthless lead tokens.  But the Court need not even reach those tokens, for Plaintiffs' shotgun-approach to this litigation has given rise to no less than three dispositive defenses that require dismissal of Plaintiffs' Complaint on its face, with prejudice.

## II.     PROCEDURAL HISTORY

This is now the *fourth* lawsuit Plaintiffs have filed—in two different forums—challenging St. Elizabeth and SEP's COVID-19 vaccine mandate (the "Policy").  Plaintiffs' other three

lawsuits have all been voluntarily dismissed.[1]

Plaintiffs first sued St. Elizabeth and SEP in Boone Circuit Court, which case was removed to this Court on the basis of federal question jurisdiction. That action, styled *Christy Beckerich, et al. v. Saint Elizabeth Medical Center, Inc.*, *et al.,* Eastern District of Kentucky Case No. 2:21-CV-00100-DLB-EBA, asserted 20 causes of action, including claims for an alleged violation of the Sherman Antitrust Act and for injunctive relief. (First Kentucky Complaint, attached as **Exhibit 2**, Counts XI and XIII) The antitrust claim was based upon St. Elizabeth and SEP's participation in an alleged conspiracy amongst the "six major healthcare systems in the Cincinnati area"—namely, St. Elizabeth, Children's Hospital, Christ Hospital, U.C. Health, Tri-Health, and Mercy—to require a "joint vaccine mandate."[2] (*Id.*, ¶ 279)

As this Court is aware, Plaintiffs pursued their claim for injunctive relief by filing a Motion for Temporary Restraining Order and/or Preliminary Injunction on August 23, which sought to enjoin St. Elizabeth and SEP from enforcing the Policy. Due to Plaintiffs' request for a temporary restraining order, this Court ordered St. Elizabeth and SEP to respond by 5:00 p.m. on August 27. Plaintiffs' Motion was set for oral argument on August 31.

On August 27, St. Elizabeth and SEP timely filed a Response in Opposition to Plaintiffs' Motion. The brief revealed that Plaintiffs' Complaint contained patently false allegations of fact,

---

[1] A full statement of facts is beyond the scope of this Motion, which addresses the insufficiency of Plaintiffs' Complaint, but the complete factual background can be found in the Response to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 13). The exhibits attached hereto are the three other Complaints filed by Plaintiffs and the Notices by which all three lawsuits were voluntarily dismissed. The Court may take judicial notice of these filings on this motion to dismiss. *E.g.*, *U.S. v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action[.] … Courts can properly notice prior judicial acts for the purpose of acting upon them.") (quoting 21B Charles Alan Wright et al., Federal Practice and Procedure § 5106.4 (2d ed. 2005)).

[2] Children's Hospital, Christ Hospital, U.C. Health, Tri-Health, and Mercy are referred to herein as "the Cincinnati hospitals." Each of the Cincinnati hospitals was also sued in five separate (but apparently identical) lawsuits filed by Deters Law in Hamilton County.

as well as patently false assertions of law (*e.g.,* "the mandate … comes from the government who cannot force vaccinations"). The brief brought to light the uniform acceptance of COVID-19 vaccine mandates by every legal authority to consider them at that time, and it included an affidavit on the safety and effectiveness of the COVID-19 vaccines from a highly qualified infectious disease physician associated with the University of Pennsylvania.

Meanwhile, while the Kentucky action was proceeding before this Court on an expedited basis, a separate lawsuit was filed in the Southern District of Ohio against all six hospital systems and their affiliated physician groups (including St. Elizabeth and SEP). The Ohio case was styled *Christy Beckerich, individually and as class representative, et al. v. Saint Elizabeth Medical Center, Inc., et al.*, Southern District of Ohio Case No. 1:21-CV-548-TSB. (First Southern District of Ohio Complaint, attached as **Exhibit 3**) That case asserted one claim for an alleged violation of the Sherman Antitrust Act (*i.e.*, the same claim for the alleged conspiracy already pending against St. Elizabeth and SEP in the Kentucky action), and one claim for injunctive relief (*i.e.,* the same claim Plaintiffs were pursuing in the Kentucky Action with their Motion for Temporary Restraining Order and/or Preliminary Injunction). (Id., ¶ 15-16, and p. 76-78) In short, this case was a collective antitrust suit against all six hospital systems, alleging the very same antitrust claim that Plaintiffs were already pursuing against each system within the respective individual lawsuits.[3]

Plaintiffs' seven-lawsuit offensive came to an abrupt halt on Sunday, August 29, 2021. At 3:22 p.m., the Southern District of Ohio action against all hospital systems was voluntarily dismissed by a "Notice of Dismissal Without Prejudice (FRCP 41(a)(1)(A)(i))." (Southern District of Ohio Notice, attached as **Exhibit 4**) Minutes later, at 3:41 p.m., the action pending before this Court was likewise voluntarily dismissed by a "Notice of Dismissal Without Prejudice (FRCP

---

[3] It is apparent that Plaintiffs' strategy was to increase their chances of prevailing on the primary relief sought—an injunction preventing the enforcement of the vaccine mandates—by presenting the same case to multiple courts.

41(a)(1)(A)(i))." (Eastern District of Kentucky Notice, attached as **Exhibit 5**)[4]  Because the Southern District of Ohio action was the first lawsuit to be dismissed, it is referred to herein as "*Beckerich I*."  The Eastern District of Kentucky action is referred to as "*Beckerich II*."[5]

On August 31, counsel for the parties in *Beckerich II* appeared before this Court for a status conference, in order to discuss Plaintiffs' intention to refile.  At that time, this Court reminded Plaintiffs' counsel that Rule 8 applies to their 101-page, 737-paragraph Complaint, and it suggested that Plaintiffs pare down their refiled Complaint to a short and plain statement of their claims.  The Court also suggested that the claims be altered to reflect the fact that the Pfizer vaccine had been fully approved, citing an attorney's obligation to adjust legal theories to new facts.

On September 3, Plaintiffs refiled both lawsuits.  As before, the second Southern District of Ohio lawsuit, styled *Christy Beckerich, individually and as class representative, et al. v. Saint Elizabeth Medical Center, Inc., et al.*, Southern District of Ohio Case No. 1:21-CV-576-TSB (hereinafter referred to as "*Beckerich III*"), named St. Elizabeth, SEP, the Cincinnati hospitals, and their respective physician groups.  (*Beckerich III* Complaint, attached as **Exhibit 6**)  With this new lawsuit, Plaintiffs apparently decided to forego individual lawsuits against each of the Cincinnati hospitals, instead asserting 23 different claims against all of them in one gigantic legal proceeding.  On the other hand, the Complaint against St. Elizabeth and SEP was limited to the same alleged violation of the Sherman Antitrust Act and the same claim for injunctive relief.  (Id., ¶ 17)  However, St. Elizabeth and SEP were not spared on the 21 other claims.

---

[4] The precise times of filing can be found on the first page of the respective Notices of Electronic Filing, which are included in Exhibits 4 and 5.

[5] According to Plaintiffs' non-attorney spokesman, these dismissals (plus the voluntary dismissals of the five lawsuits against the Cincinnati hospitals) were a strategic maneuver in direct response to the brief St. Elizabeth and SEP filed with this Court on August 27. *See* The Bulldog Show, *Vax Battle Update August 30, 2021*, https://rumble.com/vlv5ae-vax-battle-update-august-30-2021.html (5:12 – 6:04) ("They've showed some cards.  One of the best tactics and strategies is a temporary retreat to counterattack and win.  Oldest trick in the book from a military tactic.")

Indeed, despite being instructed by this Court to pare down their next Complaint, Plaintiffs actually ***added*** three claims by asserting the full set of 23 claims in their ***fourth*** lawsuit against St. Elizabeth and SEP based on the same operative facts concerning the implementation and enforcement of the Policy. (Doc. No. 1)  In this 92-page, 617-paragraph fourth complaint, styled *Christy Beckerich, et al. v. Saint Elizabeth Medical Center, Inc., et al.*, Eastern District of Kentucky Case No. 2:21-CV-105-DLB-EBA (hereinafter referred to as *Beckerich IV*"), Plaintiffs asserted new claims for alleged violation of the Americans With Disabilities Act ("ADA"), violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and promissory estoppel.  The other 20 claims are identical to those that had been voluntarily dismissed in *Beckerich II*.  Even beyond that, the antitrust and injunctive relief claims are identical to those that had been voluntarily dismissed twice in *Beckerich I* and *Beckerich II*, and which were also pending (again) in *Beckerich III*.[6]  Finally, Plaintiffs' alteration of their claims to reflect Pfizer's FDA approval was as follows: "[t]he U.S. government and Defendants are lying about the Pfizer approval." (Doc. No. 1, ¶ 142)

On September 7, Plaintiffs again filed a Motion for Restraining Order and/or Preliminary Injunction in this Court.  Accordingly, this Court ordered St. Elizabeth and SEP to file a Response by September 14, and it scheduled oral argument on Plaintiffs' Motion on September 22.  St. Elizabeth and SEP are submitting this Motion to Dismiss in conjunction with their Response.

Also on September 7, Plaintiffs filed the very same (verbatim) Motion for Restraining Order and/or Preliminary Injunction in *Beckerich III*.  On September 10, counsel for the parties participated in a phone conference with the Honorable Timothy S. Black of the Southern District of Ohio.  Judge Black set a briefing schedule under which Plaintiffs had until September 13 to

---

[6] Plaintiffs' Complaint in *Beckerich III* states: "**St. Elizabeth in this lawsuit is only a Defendant on the Anti-Trust case. There is a separate lawsuit against St. Elizabeth in federal court in Kentucky. These allegations also appear there** [sic]."  (Ex. 6, ¶ 17) (bold in original)

present any additional expert affidavits; Defendants had until September 14 to respond to Plaintiffs' motion for temporary restraining order; and Plaintiffs had until September 16 to file a Reply.  Judge Black committed to expeditiously ruling on the motion.

Less than seven hours after the phone conference with Judge Black, Plaintiffs voluntarily dismissed *Beckerich III* by yet another "Notice of Dismissal Without Prejudice (FRCP 41(a)(1)(A)(i))."  (*Beckerich III* Notice, attached as **Exhibit 7**)  This was the third time Plaintiffs voluntarily dismissed the antitrust and injunctive relief claims against St. Elizabeth and SEP.

## III.   LEGAL ARGUMENT

Plaintiffs' Complaint should be dismissed in its entirety, with prejudice, for four reasons. First, the Complaint violates Rule 8's requirement for a short and plain statement of the claims. Second, all of Plaintiffs' claims are barred by *res judicata*, because Plaintiffs have already voluntarily dismissed ***three*** actions challenging the legality of the Policy.  Third, Plaintiffs fail to plead the facts necessary to demonstrate a justiciable case or controversy, thus the Court lacks subject-matter jurisdiction.  Fourth, even if the Court evaluates the merits of the 23 individual claims, none of them state plausible claims against St. Elizabeth and SEP.

### A.   The Complaint should be dismissed with prejudice for failure to comply with Rule 8.

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Determining whether a complaint is short and plain is committed to the district court's discretion.  *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021).

As recently explained by the Sixth Circuit—in a decision published "to set precedent for any future cases"—Rule 8 prohibits "*obfuscation* of the plaintiff's claims."  *Id.* at 651.  Excessive length is a factor, although not dispositive: "[t]he key is whether the complaint is so verbose,

confused and redundant that its true substance, if any, is well disguised." *Id*. (internal quotation marks and citation omitted). "The district court and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue." *Id*. (internal quotation marks and citation omitted). "A plaintiff must not append so many limps and outward flourishes to a pleading that neither court nor defendant can easily identify the soul of the claim." *Id*. at 653.

In *Kensu*, the district court dismissed a 108-page, 579-paragraph complaint with prejudice for violation of Rule 8, finding that the defendants would have "had to expend enormous effort digging through a morass of irrelevancies to identify the few allegations that matter." *Id*. at 649 (internal quotation marks and citation omitted). The Sixth Circuit affirmed the district court's finding of a Rule 8 violation, for reasons including that it was "hard to figure out which allegations are really at issue and which are background[.]" *Id*.

As in *Kensu*, Plaintiffs' 92-page, 617-paragraph Complaint makes it is difficult to parse out which allegations are really at issue, versus allegations that are for background (or political effect). For instance, the Complaint contains large sections regarding "the COVID science," herd immunity, why some people (but not any specific Plaintiff) do not want to be vaccinated, the "Ten Lies Being Told to the American Public About COVID," and Plaintiffs' new theory that "[t]he most recent fraud is Americans are not receiving an FDA approved vaccine," because "[t]he U.S. government … [is] lying about the Pfizer approval." (Doc. No. 1, ¶ 36 – 68, 78-145) Also, some allegations are not even directed at St. Elizabeth or SEP, such as a copy-and-pasted email from a Christ hospital nurse. (Id., ¶ 153) The Complaint unquestionably violates Rule 8.

In *Kensu*, the Sixth Circuit also established when it is proper to dismiss a complaint with prejudice for violation of Rule 8:

> … [A] district court need not have infinite patience. Persistent or vexatious refusal to follow the rules may warrant dismissal with prejudice. So if a district court has offered multiple opportunities to fix the complaint and the plaintiff has persisted in noncompliance, then the harsh sanction of dismissal is appropriate. Likewise if the plaintiff's amended complaint indicates a basic inability or unwillingness to comply with the district court's orders.

*Kensu*, 5 F.4th at 653 (internal citations omitted).  The Sixth Circuit affirmed dismissal with prejudice because the plaintiffs' third complaint still retained irrelevant allegations and demonstrated an inability (or unwillingness) to comply with the district court's orders.  *Id*; *see also Plymale v. Freeman*, 1991 WL 54882, at *1 (6th Cir. 1991) (affirming dismissal, with prejudice, of a "rambling complaint which is 119 pages long and encompasses twenty-four counts").

The procedural history of Plaintiffs' barrage of litigation alone demonstrates Plaintiffs' persistent and vexatious conduct.  Also, even ignoring the twice voluntarily dismissed cases in the Southern District of Ohio, Plaintiffs have had an opportunity to fix their Complaint before this Court.  At the status conference on August 31 (after Plaintiffs voluntarily dismissed their first case in this forum), the Court reminded Plaintiffs that their refiled complaint needed to comply with Rule 8.  Plaintiffs then submitted a putative "edited and scaled back" version of the prior Complaint, yet it ***added*** a 4-page "Introductory Statement" (without paragraph identifiers) that reads more like a legal brief than a complaint.  (Doc. No. 1, p. 6-10)  Also, it appears all Plaintiffs did to "scale back" their Complaint was delete extraneous sections about the chronology of COVID-19, various industries "lying to the American Public," and the "Current Incompetency of Joe Biden Administration [sic]."  (Ex. 2, ¶ 7 – 93)  The deletion of material that had no business being in the first Complaint did not cure Plaintiffs' Rule 8 problem.

Further, Plaintiffs refused to drop claims that, as revealed by Defendants' previous Response, are obviously frivolous (e.g., their claims for violation of the Nuremberg Code, which derives from forced medical experimentation by Nazis, and for "tortious interference with personal

healthcare," which is not even a real claim).  To the contrary, Plaintiffs actually **added** three new claims.  This demonstrates Plaintiffs' unwillingness to comply with this Court's instructions.

There is no question that the Complaint violates Rule 8.  And pursuant to *Kensu*, it would be well within this Court's discretion to dismiss it with prejudice.

> **B.      This entire action should be dismissed because Plaintiffs have already voluntarily dismissed <u>three</u> actions based on the same operative facts, thereby triggering the two-dismissal rule of 41(a)(1)(B) and *res judicata*.**

Plaintiffs voluntarily dismissed *Beckerich I*, *II*, and *III* by notice pursuant to Rule 41(a)(1)(A)(i).  The "effect" of these notices is governed by Rule 41(a)(1)(B):

> (B)   *Effect*.   Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  *But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits*.

Fed. R. Civ. Proc. 41(a)(1)(B) (emphasis added).  This so-called "two-dismissal rule" (or "double dismissal rule") is designed to "prevent delays and harassment caused by a plaintiff who unilaterally and repeatedly dismisses a case without prejudice."  *Wellfount, Corp. v. Hennis Care Ctr. of Bolivar, Inc.*, 951 F.3d 769, 773–74 (6th Cir. 2020) (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2368 (4th ed.)).  It is "practically necessary to prevent an unreasonable use of dismissals."  *Evans v. Laborers' Dist. Council and Contractors' Pension Fund of Ohio*, 602 Fed.Appx. 608, 614 (6th Cir. 2015) (internal citation omitted).

"The 'two-dismissal' rule is an exception to the general principle, contained in Rule 41(a)(1)[,] … that a voluntary dismissal … does not bar a new suit based upon the same claim."  *Wellfount,* 951 F.3d 773–74 (citation omitted).  Thus, once the two-dismissal rule is triggered, a subsequent action is barred as a matter of law by *res judicata*.  *Microvote Corp. v. Casey*, 1995 WL 364170, at *2 (6th Cir. 1995) ("A dismissal that operates as an adjudication upon the merits has the effect of a dismissal with prejudice, and if an action that has been so dismissed is refiled,

9

it is vulnerable to the defense of *res judicata*."); *Manning v. South Carolina Dept. of Highway and Public Transp.*, 914 F.2d 44, 47 (4th Cir. 1990) ("Because a notice of second dismissal by the plaintiff serves as an 'adjudication upon the merits,' the doctrine of *res judicata* applies.").

    **1.**    **Plaintiffs' antitrust and injunctive relief claims have been voluntarily dismissed three times, therefore they are barred.**

A cursory comparison of the Complaints in *Beckerich I*, *II*, and *III* confirms they all "include[ed] the same claim" for purposes of the two-dismissal rule.   That is, all three lawsuits included the ***exact same*** antitrust claim against St. Elizabeth and SEP, for their participation in an alleged conspiracy with the Cincinnati hospitals.  (Ex. 2, Count XI; Ex. 3, Count I; Ex. 6, ¶ 17)  In fact, it appears Plaintiffs relied upon ***identical*** factual allegations in all three cases.[7]  In addition, all three cases asserted the same claim for injunctive relief, seeking to enjoin St. Elizabeth and SEP from enforcing the Policy.  (Ex. 2, Count XIII; Ex. 3, Count II; Ex. 6, Count II)

Although the two-dismissal rule, by its very nature, only requires two dismissals, here Plaintiffs have voluntarily dismissed their antitrust and injunctive relief claims ***three*** times.  There is no doubt these claims are barred by *res judicata*.

    **2.**    **The other 18 claims asserted in *Beckerich II* were adjudicated on the merits by operation of the two-dismissal rule, therefore they are also barred by *res judicata*.**

As explained above, *Beckerich II* asserted 20 claims—not just the antitrust and injunctive relief claims.  However, because *Beckerich I* (*i.e.,* the first case to be voluntarily dismissed) "included" the same antitrust and injunctive relief claims as *Beckerich II*, the second voluntary dismissal of *Beckerich II* operated as an adjudication on the merits under the plain language of

---

[7] For instance, with the exception of Paragraph 16 of the *Beckerich I* Complaint (which is just a summary of the alleged conspiracy), every other paragraph contained in the "General Factual Allegations Relative to All Defendants" and the "Factual Allegations from St. Elizabeth Healthcare" were literally copied and pasted into both the *Beckerich I* and *Beckerich II* complaints.  (*Compare* Ex. 2, ¶ 268-570, *with* Ex. 3, ¶ 15-319)  In other words, 302 paragraphs (across 30 pages) are identical.

Rule 41(a)(1)(B).  In other words, all 20 causes of action in *Beckerich II* were dismissed with prejudice by operation of law.  *See Microvote*, 1995 WL 364170, at *2 (equating a second voluntary dismissal as "a dismissal with prejudice," which then triggers *res judicata*).

But that is not the only reason why the two-dismissal rule bars the additional 18 claims asserted in *Beckerich II*.  *Beckerich I* and *Beckerich II* were also "based on … the same claim" within the context of the two-dismissal rule as well.

"A voluntary dismissal under Fed.R.Civ.P. 41(a) has the effect of a judgment with prejudice when it is the second suit **based on the same transaction**." *Evans*, 602 Fed.Appx. at 614 (emphasis added); *see also Hunter v. Shield*, 2021 WL 3046642, at *5 (S.D. Ohio July 20, 2021) (granting summary judgment because "the instant claims against [Williams] are barred under the doctrine of *res judicata* because, under Ohio law, the Hunters have already twice filed and dismissed claims against Williams arising out of the same transaction").  Accordingly, so long as two lawsuits are "based on the same transaction," the second voluntary dismissal operates as an adjudication on the merits (*i.e.*, dismissal with prejudice) **even if** new claims are asserted in the second action—as is the case herein.

For instance, in *Evans*, both of the actions (*Evans I* and *Evans II*) concerned the plaintiff's alleged entitlement to pension benefits, but the second action added a claim for violation of ERISA. *Evans*, 602 Fed.Appx. at 612-613.  Notwithstanding the addition of the new claim in the second action, the Sixth Circuit held that the actions "involved the same claim: Evans's alleged entitlement to pension benefits." *Id*. at 614.  Therefore, when a third action concerning an alleged entitlement to pension benefits was filed, the Sixth Circuit reversed the district court and directed that summary judgment be entered in the third lawsuit on the basis of the two-dismissal rule. *Id*. at 614-615.

A case that is particularly comparable to the instant litigation—by virtue of two lawsuits being voluntarily dismissed in almost simultaneous fashion—is *Microvote Corp. v. Casey*, 1995 WL 364170 (6th Cir. 1995). In *Microvote*, the plaintiff first sued the Board of Elections in Ohio state court, in order to challenge the award of a government contract. *Id*. at *1. Shortly thereafter, the plaintiff sued the Board of County Commissioners in state court, which suit was "predicated on essentially the same set of facts and sought essentially the same relief as the former." *Id*. The second lawsuit was dismissed first, by a notice of voluntary dismissal (analogous to *Beckerich I* herein). *Id*. "Moments later," the first lawsuit was also dismissed by a notice of voluntary dismissal (analogous to *Beckerich II* herein). *Id*. When a third lawsuit was filed in federal court again challenging the legality of the contract award (analogous to both *Beckerich III and IV*), the district court dismissed both the Board of Elections and the Board of County Commissioners under the two-dismissal rule. *Id*. at *2  The Sixth Circuit held that "the district court's application of the two-dismissal rule was clearly correct." *Id*. at *3.[8]

In this matter, it is indisputable that *Beckerich I* and *Beckerich II* were both based on the same transaction—namely, St. Elizabeth and SEP's implementation and enforcement of the mandatory vaccination Policy. Furthermore, as in *Microvote*, both *Beckerich I* and *Beckerich II* were predicated on the same set of facts (the events leading up to and including implementation of the Policy) and sought the same relief (an injunction enjoining enforcement of the Policy, plus damages). Therefore, the voluntary dismissal of both cases triggers the two-dismissal rule and *res judicata*, notwithstanding the fact that *Beckerich II* included 18 additional causes of action.

---

[8] The Sixth Circuit applied Ohio's Rule 41(A)(1) because the two voluntarily-dismissed lawsuits had been filed in Ohio state court. However, the Sixth Circuit observed that Ohio's rule "is substantially similar" to its federal counterpart, in that the Ohio rule likewise provides that an "adjudication upon the merits" occurs when a notice of voluntary dismissal is "filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim." *Microvote*, 1995 WL 364170, at *2. Therefore, *Microvote* is instructive with regard to the Federal rule.

The Sixth Circuit is not alone in utilizing a "same transaction" test to conclude that the two-dismissal rule applies even when the second dismissed lawsuit includes additional claims, as is the case herein. Just last year, the Second Circuit Court of Appeals held that "a second action is 'based on or include[es] the same claim' for purposes of Rule 41(a)(1)(B) whenever it arises from the same transaction or occurrence as the first action." *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 50 (2d. Cir. 2020)). In that case, the plaintiffs voluntarily dismissed a New York state court action ("the NYS Action"), but then filed a federal lawsuit ("the EDNY II Action") asserting the same state law claims, plus federal claims. *Id*. The EDNY II Action was voluntarily dismissed, but days later a new complaint was filed that was "virtually identical" to the dismissed EDNY II Action. *Id*. The new lawsuit was "based on the same operative facts and names the same defendants (Appellees here) as did the NYS and EDNY II Actions and also includes the same legal claims as asserted in the EDNY II Action." *Id*. The Second Circuit affirmed summary judgment:

> Here, although the complaint in federal court included federal causes of action not pled in state court, both actions arose from the same set of facts and all of Plaintiffs-Appellants' additional claims either were or could have been raised in state court. As aptly noted by the District Court, to hold otherwise would allow a plaintiff to evade enforcement of the two-dismissal rule by simply adding a new cause of action to the same set of facts.

*Id*. at 50.

Here, it is indisputable that when *Beckerich II* was voluntarily dismissed in the Eastern District of Kentucky at 3:41 p.m. on August 29 (Ex. 5), another action that was "based on or including the same claim" (*i.e., Beckerich I*) had already been voluntarily dismissed at 3:22 p.m. on August 29. (Ex. 4) Under the plain language of Rule 41(a)(1)(B), all 20 causes of action asserted in *Beckerich II* were "adjudicated on the merits" as a matter of law, which has "the effect of a dismissal with prejudice … ." *Evans*, 602 Fed.Appx. at 614. Therefore, those 20 causes of action should be dismissed for failure to state a claim upon which relief may be granted.

13

**3.      Plaintiffs' new ADA, Title VII, and promissory estoppel claims are also barred by *res judicata*, because all three voluntarily dismissed lawsuits were based on the same transaction.**

Plaintiffs' (fourth) Complaint in this action includes a new ADA/Rehabilitation Act claim, a new Title VII claim, and a new promissory estoppel claim—all based on the same operative facts concerning the implementation and enforcement of the Policy.  (Doc. No. 1, Counts I, II, and III) These three new claims are likewise barred by *res judicata,* because "[c]laim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action ." *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (emphasis original); *see also Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir. 1964) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.")

The Sixth Circuit has relied upon *res judicata* to dismiss new claims asserted in a subsequent lawsuit after the two-dismissal rule of Rule 41 has been triggered.  In *Demsey v. Demsey*, 488 Fed. App'x 1 (6th Cir. 2012), the plaintiff voluntarily dismissed two state court lawsuits asserting abuse of process and intentional infliction of emotional distress against his sister, who made a police report which led to the plaintiff's arrest.  *Id*. at 2.  The plaintiff's third lawsuit was dismissed for failure of service, so he filed a fourth suit in federal court alleging his sister violated 42 U.S.C. § 1983 by conspiring with the police.  *Id*. at *2.  The district court dismissed the fourth lawsuit because the second voluntarily dismissal operated as a judgment on the merits, thereby precluding the plaintiff from bringing suit again based on the same incident.  *Id.*

The Sixth Circuit affirmed the dismissal.  The Court first held that there had been a final, valid decision on the merits under the two-dismissal rule.  *Id.* at 3.  The Court then reasoned that the new federal cause of action did not avoid *res judicata*: "[i]t does not matter that the third and

fourth complaints contained 'new legal theories;' he could have raised them before." *Id*. at 4.

As in *Demsey*, the dismissal of *Beckerich II* (and then *Beckerich III*) with prejudice constitutes a valid judgment on the merits of all claims asserted therein, as well as "all claims that could have been litigated growing from the same transaction." *Id*. at 4. It is indisputable that Plaintiffs' three new claims all arise from the same transaction—implementation and enforcement of the Policy—and that Plaintiffs certainly could have asserted these claims in *Beckerich I*, *II*, or *III*. The fact that Plaintiffs chose not to pursue these claims in the three earlier cases does not circumvent *res judicata*, for a plaintiff "may not clothe his suit in new legal theories to defeat claim preclusion." *Id.* at 7; *see also Wheeler v. Dayton Police Dept.*, 807 F.3d 764, 767-68 (6th Cir. 2015) (affirming dismissal on res judicata grounds, where the plaintiff "should have raised these allegations in his earlier complaint," which was dismissed with prejudice).

For these reasons, Plaintiffs' entire Complaint should be dismissed with prejudice under the two-dismissal rule and *res judicata*.

### C.    This entire action should be dismissed for lack of subject matter jurisdiction, due to Plaintiffs' failure to demonstrate a justiciable case or controversy.

Among the many false statements in Plaintiffs' Complaint is their assertion that "[n]o court has ever upheld a mandate for an EUA vaccine." (Doc. No. 1, ¶ 83) As previously pointed out, the Seventh Circuit recently affirmed the denial of a preliminary injunction in a constitutional challenge to Indiana University's COVID-19 vaccine mandate—when all vaccines were still subject to EUA. *See Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021). The opinion was authored by the Hon. Frank Easterbrook—one of the country's most respected legal minds.

Analogous to St. Elizabeth and SEP's Policy, Indiana University's vaccine mandate included a process by which students could request a medical or religious exemption. *Id*. at 592. Of the eight student plaintiffs, seven had either received an exemption or were eligible for an

exemption.  *Id*. at 593.  At the district court level, the Northern District of Indiana concluded that it had subject matter jurisdiction (*i.e.,* a justiciable case or controversy existed) because the one student "faces an unexemptible choice" to be vaccinated or not attend Indiana University. *Klaassen*, 2021 WL 3073926, at *14.  The Seventh Circuit agreed: "[t]he eighth plaintiff does not qualify for an exemption, which is why we have a justiciable controversy."  *Klaassen*, 7 F.4th at 593; *see also Wade v. Univ. of Conn. Bd. of Trustees*, 2021 WL 3616035, at *7-8 (D. Conn. Aug. 16, 2021) (dismissing challenge to vaccine mandate and concluding that one plaintiff who failed to request an exemption lacked standing, and that two other plaintiffs had their standing rendered moot when their exemption requests were granted after suit was filed).

In order to demonstrate standing to challenge the Policy, Plaintiffs must allege that they applied for an exemption but were denied.  However, Plaintiffs' (fourth) Complaint still fails to plead any facts regarding whether any of the Plaintiffs have even requested an exemption.  In fact, the only allegation about the Plaintiffs is that they are "residents of and domiciled in the Commonwealth of Kentucky, the State of Ohio or Indiana and are employed with one of the Defendants." (Doc. No. 1, ¶ 2)  That is the sum and substance of Plaintiffs' effort to demonstrate standing.  *See also* Fed. R. Civ. P. 8(a)(2) (a complaint must include a "short and plain statement of the claim ***showing that the pleader is entitled to relief***") (emphasis added).  Here, there are no allegations in the Complaint showing that any individual Plaintiff is entitled to relief.

For these reasons, the Court can summarily dismiss the Complaint for lack of jurisdiction, due to Plaintiffs' failure to plead the facts necessary to demonstrate a justiciable case or controversy.  *See KNC Investments, LLC v. Lane's End Stallions, Inc.*, 581 Fed.Appx. 484, 485 (6th Cir. 2014) (affirming dismissal for lack of subject-matter jurisdiction pursuant to Rule

12(b)(1), based on the absence of a case or controversy).[9]

### D.      Even if the Court were to reach the merits of Plaintiffs' claims, none of them can survive Rule 12(B)(6).

"[A] formulaic recitation of the elements of a cause of action will not do." *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007).   A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 ) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When evaluating the sufficiency of a complaint, the court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).   Accordingly, "the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*.

#### 1.      Violation of the Rehabilitation Act and the Americans with Disabilities Act

 Plaintiffs allege claims brought pursuant to the ADA and the Rehabilitation Act.  (Doc. No. 1, p. 60)  As a threshold matter, Plaintiffs' ADA claim must be dismissed because Plaintiffs have failed to exhaust their administrative remedies by first filing a charge with the EEOC and obtaining a notice of right to sue.  There is no allegation in the Complaint that Plaintiffs filed a charge with the EEOC prior to filing this lawsuit, and there is no right to sue letter filed with the Complaint.  "Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the

---

[9] As explained in St. Elizabeth and SEP's Response to Plaintiffs' Motion (Doc. No. 13), two plaintiffs certainly lack standing, because they have already had exemption requests ***granted***.

ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir.2000). "Until an employee receives a right to sue letter from the EEOC, she has not exhausted her administrative remedies and may not file suit under the ADA." *Oliver v. Titlemax*, 149 F. Supp. 3d 857, 863 (E.D. Tenn. 2016). Therefore, Plaintiffs' ADA claim must be dismissed for failure to exhaust administrative remedies. *See Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018) (finding that "failure to properly exhaust is an appropriate basis for dismissal of an ADA action" and affirming district court's dismissal of ADA claim under Rule 12(b)(6)).[10]

Turning to the merits of Count I of the Complaint, Plaintiffs do not identify any specific cause of action under either the ADA or the Rehabilitation Act. It appears from the allegations pled that Plaintiffs are attempting to bring a cause of action for failure to accommodate. (Doc. No. 1, ¶ 435-437) However, Plaintiffs have failed to allege sufficient facts to state a plausible claim for failure to accommodate under either statute.[11]

There is no allegation in the Complaint that any of the 40 named Plaintiffs has a "disability" as that term is defined under the ADA. *See Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522–23 (6th Cir. 2021) ("A person is disabled under the ADA when the person has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment. Major life activities include walking, standing, lifting, bending, and working.") There is no allegation in the Complaint which would

---

[10] St. Elizabeth acknowledges there is not a parallel requirement under the Rehabilitation Act that a plaintiff bringing an employment disability claim against a private employer first exhaust administrative remedies. It should be noted, though, that there are no allegations in the Complaint establishing St. Elizabeth is subject to the Rehabilitation Act.

[11] Plaintiffs' Rehabilitation Act claim must be analyzed under the same legal framework as an ADA claim. *See Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("Moreover, the district court properly analyzed Ford's claims under the ADA and under § 504 of the Rehabilitation Act together. By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination."). Accordingly, references to and discussion of "the ADA" hereinafter also include the Rehabilitation Act and Plaintiffs' claims brought thereunder.

show that any Plaintiff meets the foregoing criteria.  Instead, the Complaint includes a blanket and conclusory allegation that "Plaintiffs and the class are qualified individuals with disabilities as defined by the ADA and Rehabilitation Act which prevent them from complying with the illegal vaccine mandate issued by the Defendants."  (Doc. No. 1, ¶ 434)  Plaintiffs have alleged no facts in support of this conclusory allegation.

There is no allegation in the Complaint that any particular Plaintiff has any specific mental or physical impairment, much less an impairment which substantially limits one or more major life activities.  As such, the Complaint fails to show that Plaintiffs are covered by the protections of the ADA or the Rehabilitation Act, or that they have standing to bring a claim under these statutes.  Their failure to accommodate claim therefore is implausible on its face.

Other district courts in the Sixth Circuit have properly dismissed ADA claims where the complaint fails to sufficiently allege the plaintiff is disabled.  *See Alessio v. United Airlines, Inc.*, 2018 WL 6064866, at *2 (N.D. Ohio Nov. 20, 2018), aff'd, 2019 WL 12631628 (6th Cir. June 24, 2019) ("First, she has failed to set forth factual allegations supporting a finding that she is an individual with a disability, which is a prerequisite to demonstrating that she is qualified for protection under the ADA . . . This failure, alone, is fatal to her claim."); *Thomas v. Dana Com. Vehicle Prod., LLC*, 2014 WL 1329948, at *4 (W.D. Ky. Apr. 1, 2014) ("Plaintiff fails to identify, even in general terms, his disability and fails to identify a specific medical condition for which he was regarded as disabled. Moreover, Plaintiff fails to identify how he is substantially limited in any major life activity. . . Accepting the non-conclusory factual allegations as true for purposes of Rule 12(b)(6) . . . Plaintiff has failed to allege sufficient facts to plausibly state that he had a 'disability' for purposes of Rule 12(b)(6)."); *Davis v. CEVA Logistics*, 2013 WL 434051, at *2 (S.D. Ohio Feb. 5, 2013) ("Accordingly, courts have found that the failure to allege any substantial

limitations in a major life activity is grounds for dismissal."). Because Plaintiffs have failed to allege sufficient facts showing that any Plaintiff has a disability, Plaintiffs have failed to state a claim for failure to accommodate.

The implausibility of Plaintiffs' failure to accommodate claim is further demonstrated by the fact the Complaint does not allege any specific instance where St. Elizabeth has failed to accommodate any specific Plaintiff. As explained above in the justiciability/standing discussion, the Complaint contains no allegation that any particular Plaintiff is eligible for, or has requested, a medical exemption. Nor is there an allegation that St. Elizabeth has denied any medical exemption requested by any particular Plaintiff. Plaintiffs' failure to allege such facts is dispositive of their failure to accommodate claim. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) ("The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations.").[12] Plaintiffs thus cannot state a plausible claim for failure to accommodate when they have not alleged that any particular Plaintiff is eligible for a medical exemption, has requested a medical exemption, or has been denied a medical exemption.

While Plaintiffs are not required to establish their entire prima facie case at the pleading stage, their failure to allege sufficient facts to support *any* of the requisite elements of a prima facie case further illustrates that Plaintiffs have not pled a claim for relief that is facially plausible. The elements of a prima facie case for failure to accommodate include: (1) the claimant was disabled within the meaning of the ADA; (2) the claimant was otherwise qualified for the position, with or without reasonable accommodation; (3) the employer knew or had reason to know about the

---

[12] *Johnson* was a Rule 56 summary judgment case; however, the same rationale is applicable under a Rule 12(b)(6) analysis, where Plaintiffs have made no attempt to allege any facts showing that any Plaintiff has requested an accommodation or been denied an accommodation. Plaintiffs cannot maintain a failure to accommodate claim when they have not pled there has been a failure to accommodate any Plaintiff.

claimant's disability; (4) the claimant requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018).  As already discussed, Plaintiffs have alleged no facts which would satisfy the first, fourth, and fifth elements. The third element also has no factual support in the Complaint, as it cannot be said whether St. Elizabeth knew or had reason to know about a disability which has not even been alleged.  As to the second element, the Complaint does not identify what "position" any Plaintiff holds, much less the essential functions of any Plaintiffs' position, or whether any Plaintiff is qualified for his or her position with or without reasonable accommodation.  The upshot is the Complaint is totally devoid of any factual support for Plaintiffs' failure to accommodate claim, and dismissal pursuant to *Twombly* and *Iqbal* is appropriate.

As a final matter, the Policy and its procedures for requesting and processing medical exemption requests complies on its face in all respects with the official guidance issued by the EEOC, the federal agency charged with enforcing the ADA, concerning mandatory Covid-19 vaccines.[13]  For all of Plaintiffs' unsupported bluster that the Policy somehow violates the law, they continue to fail to recognize that the EEOC has authorized mandatory Covid-19 vaccine policies which provide for reasonable accommodations for employees with disabilities.  *Id.* at Section K.1 ("The federal EEO laws do not prevent an employer from requiring all employees physically entering the workplace to be vaccinated for COVID-19, subject to the reasonable accommodation provisions of Title VII and the ADA and other EEO considerations discussed below.").  The Complaint fails to allege a single specific instance where St. Elizabeth or SEP did not comply with the EEOC's exemption requirements.

---

[13] *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at § K, U.S. Equal Employment Opportunity Commission (May 28, 2021), available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

## 2. Violation of Title VII of the Civil Rights Act of 1964 (Failure to Consider/Provide Religious Exemptions)

For Count II of their Complaint, Plaintiffs allege a violation of Title VII of the Civil Rights Act of 1964, which violation they characterize as "Failure to Consider/Provide Religious Exemptions." (Doc. No. 1, p. 61)  As with their ADA claim, Plaintiffs' Title VII denial of religious accommodation claim must be dismissed because Plaintiffs have not exhausted their administrative remedies by first filing a charge of discrimination with the EEOC and receiving a notice of right to sue letter. *See Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004)  ("Before filing a Title VII claim, a plaintiff must receive a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) and then file suit within ninety days after receiving the right-to-sue letter … ***Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action***.") (emphasis added).  There is no allegation in the Complaint that any Plaintiff filed a charge with the EEOC prior to the filing of the Complaint.  Nor was a notice of right to sue filed with the Complaint.  Therefore, Plaintiffs' Title VII claim must be dismissed on this basis alone.

Notwithstanding that Plaintiffs' failure to exhaust their administrative remedies is a complete bar to their Title VII claim, a review of the merits of this claim shows that Plaintiffs once again have failed to state a plausible claim for relief.  There is no allegation in the Complaint that any particular Plaintiff is eligible for a religious exemption, has requested a religious exemption, or has been denied a religious exemption.  And there is no allegation in the Complaint that any particular Plaintiff has a sincerely held religious belief, observance, or practice which precludes him or her from receiving the vaccine.  Plaintiffs thus have alleged no facts which would even begin to support their claim. *See Allen-Amos v. Ford Motor Co.*, 2020 WL 4334880, at *9–10 (S.D. Ohio July 28, 2020), report and recommendation adopted, 2020 WL 5250441 (S.D. Ohio

Sept. 3, 2020) (dismissing a claim for denial of religious accommodation under Rule 12(b)(6) because the plaintiff failed to allege facts sufficient to support the elements of the claim).

"In order to establish a prima facie case for the denial of religious accommodation, a plaintiff must show: (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement."  *Id*., citing *Reed v. Int'l Union, UAW*, 569 F.3d 576, 579-580 (6th Cir. 2009).  While Plaintiffs are not required to prove their prima facie case at the pleading stage, the fact they have alleged no facts which would show that *any* of the 40 Plaintiffs can satisfy *any* of these elements speaks to the implausibility of their Title VII claim. There is no allegation in the Complaint showing that any Plaintiff: (1) holds a sincere religious belief that conflicts with an employment requirement; (2) has informed St. Elizabeth about the conflict; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement.

In sum, Plaintiffs' Title VII denial of religious accommodation claim must be dismissed because (1) Plaintiffs have failed to exhaust their administrative remedies, and (2) the Complaint is totally devoid of any factual support for this claim.

### 3. Promissory Estoppel

"Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Jeffery v. Medical Protective Co.,* 446 F. Supp. 3d 177, 182 (E.D. Ky. 2020).  Promissory estoppel cannot be invoked if reliance on the promise is unreasonable. *Id.* (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003)).

Plaintiffs claim that "Defendants repeatedly promised Plaintiffs and all class members, in late 2020 that 'the Covid vaccinations would not be mandatory to continue to work at St. Elizabeth.'" (Doc. No. 1, ¶ 452)  To this point, Plaintiffs attached Exhibit 13, an email communication from late 2020, which indicated that vaccination was not mandatory at that time.

On its face, this email is not a "promise" that gives rise to promissory estoppel. It was a statement of the policy in 2020, which has since changed. Moreover, this statement of policy was not reasonably expected to, nor did it induce any action or forbearance on the part of Plaintiffs. That is, Plaintiffs have not alleged sufficient facts to show that they materially changed their position in reliance on the statement, as required under Kentucky law. *Jackson v. JB Hunt Transport, Inc.*, 384 S.W.3d 177, 185 (Ky. App. 2012) (citing *Rivermont Inn*, 113 S.W.3d at 642). Instead, Plaintiffs merely maintained employment with St. Elizabeth or SEP.

Also, "[c]laims for promissory estoppel and breach of contract pursuant to an at-will employment agreement are not actionable" under Kentucky law. *Clemans v. National Staffing Sols., Inc.*, 459 F. Supp. 3d 842, 843-44 (E.D. Ky. 2019).  Courts interpreting Kentucky law "have consistently held that no prospective or current employee can reasonably rely on a vague promise of employment that can be terminated at any time, for any reason." *Id.* (citing *Jackson v. JB Hunt Transport, Inc.*, 384 S.W.3d 177, 185 (Ky. App. 2012) ("as an at-will employee, [the plaintiff] had no employment security to begin with"); *Harris v. Burger King Corp.*, 993 F.Supp.2d 677, 691 (W.D. Ky. 2014) ("An at-will employee can claim promissory estoppel only if she can show a specific promise of job security."); *McDonald v. Webasto Roof Systems, Inc.*, 570 Fed.App'x 474, 477 (6th Cir. 2014) (at-will status precludes promissory estoppel claim).  For these reasons, Plaintiffs have failed to state a plausible claim for promissory estoppel.  It should be dismissed.

### 4.   Violations of Section 1 of the Sherman Act, 15 U.S.C. Section 1 (Illegal Anti-Poaching Agreement)

Plaintiffs allege that St. Elizabeth, SEP, and "other area providers" conspired together to "simultaneously … impose similar illegal Covid vaccine mandates," in order to "prevent employees from simply resigning and finding employment at another provider."  (Doc. No. 1, ¶ 457)  As a threshold matter, this claim is a recapitulation of Plaintiffs' underlying theory that it is illegal for St. Elizabeth and SEP to require vaccination.  As shown herein, that underlying premise is incorrect as a matter of law.  Still, the claim fails for reasons specific to antitrust law as well.

Alleged antitrust violations are analyzed as either *per se* claims or rule-of-reason claims. *Per se* claims involve trade restraints "that are so inherently and facially anti-competitive that an elaborate and burdensome inquiry … is not required."  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  On the other hand, "[t]he rule-of-reason test requires the court to analyze the actual effect on competition in a relevant market to determine whether the conduct unreasonably restrains trade."  *Id*. at 436.  "[T]he Sixth Circuit has an automatic presumption in favor of the rule of reason standard, while the *per se* rule is reserved only for those infrequent occasions of clear cut cases in which the trade restraint is so unreasonably anticompetitive that they present straightforward questions for reviewing courts."  *Ogden v. Little Caesar Enterprises, Inc.*, 393 F. Supp. 3d 622, 633 (E.D. Mich. 2019) (dismissing Sherman Act claim for failure to state a plausible claim under either the *per se* or rule-of-reason test).

Here, Plaintiffs allege that the supposed conspiracy is *per se* unlawful.  (Doc. No. 1, ¶¶ 458 and 462)   However, "[t]o justify a *per se* prohibition a restraint must have manifestly anticompetitive effects ... ***and lack*** ... ***any redeeming virtue***."  *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (internal citations and quotation marks omitted) (emphasis added).  Without question, there is "redeeming virtue" to the Policy—*i.e.,* protection of

the health and safety of patients, visitors, and associates. *See Harris v. Univ. of Mass.*, 2021 WL 3848012, at *8 (D. Mass. Aug. 27, 2021) (recognizing the "strong public interest" that is promoted by vaccine mandates: "preventing further spread of COVID-19 on campus, a virus which has infected and taken the lives of thousands of Massachusetts residents."). Accordingly, Plaintiffs have failed to state a plausible *per se* antitrust claim. *See Com. of Ky. v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 701 (W.D. Ky. 2016) (dismissing a *per se* claim because the anti-competitive agreements had "redeeming qualities").

Plaintiffs also fail to state a plausible rule-of-reason claim, which requires the following elements: (1) a conspiracy; (2) that produced anticompetitive effects; (3) that the scheme affected relevant product and geographic markets; (4) that the conspiracy's goal and related conduct was illegal; (5) and that the restraint was the proximate cause of the plaintiff's antitrust injury." *Marathon Petroleum*, 191 F. Supp. 3d at 701. Plaintiffs' claim fails at least three of these elements. First, Plaintiffs fail to define a relevant product and geographic market, which is itself dispositive:

> Without an explanation of the other insurance companies involved, and their products and services, the court cannot determine the boundaries of the relevant product market and must dismiss the case for failure to state a claim.

*Total Benefits*, 552 F.3d at 437 (affirming dismissal of antitrust claim); *see also W. Roofing Sys., Inc. v. Insulated Roofing Contractors*, 2005 WL 8172205, at *4 (N.D. Ohio Mar. 30, 2005) (dismissing antitrust claim where plaintiff failed to adequately plead a relevant geographic market); and *In re German Auto. Manufacturers Antitrust Litig.*, 2020 WL 1542373, at *6 (N.D. Cal. Mar. 31, 2020) ("Failure to plead a relevant market is grounds to dismiss.").

Second, the goal of the alleged conspiracy was not illegal. *See Coleman v. Cannon Oil Co.*, 849 F. Supp. 1458, 1465 (M.D. Ala. 1993) ("[C]ourts have the added responsibility in antitrust conspiracy cases of assuring that underlying lawful conduct is not brought within the prohibitive

reach of the law.").   As discussed herein, vaccine mandates by private employers are legal.

Third, Plaintiffs have not plausibly alleged an antitrust injury.  Plaintiffs merely allege that they are unable to work at St. Elizabeth or "another provider," which is presumably a reference to the Cincinnati hospitals.  (Doc. No. 1, ¶ 457)  Plaintiffs ignore non-hospital-based opportunities for healthcare employment (*e.g*., assisted living facilities, urgent cares, primary care offices, outpatient clinics, etc.) that may exist in the relevant market (which cannot even be evaluated due to Plaintiffs' failure to define the market).  Also, Plaintiffs have not even identified what jobs they hold, and St. Elizabeth employs thousands of associates in non-clinical positions (*e.g.,* human resources, security, finance, nutrition services, maintenance, etc.).  Any associate employed in such a role could find employment in many other industries in Northern Kentucky and Cincinnati.

Finally, the Policy actually has a pro-competitive effect that outweighs any alleged anti-competitive effects.  The purpose of the Policy is to slow the spread of COVID-19, which will (hopefully) prevent hospitals from being overburdened and unable to care for all patients—not just those suffering from COVID-19.  The efficient operation of the region's hospitals is, in fact, a pro-competitive effect.  For these reasons, Plaintiffs fail to state a plausible antitrust claim.

### 5.    Violation of the Right to Refuse Unwanted and Medically Unnecessary Medical Care

Plaintiffs allege the Policy violates constitutional rights protected by the Ninth and Fourteenth Amendments.  Citing *Washington v. Glucksberg*, 521 U.S. 702 (1997), Plaintiffs claim they have a fundamental right to refuse unwanted medical care, thus vaccination cannot be forced upon them.  (Doc. No. 1, ¶ 464-465)  This claim fails for two independently dispositive reasons.

First and foremost, there is no fundamental right to refuse vaccines—even when the mandate comes from the government (rather than a private employer).  In this regard, another patently false statement in Plaintiffs' Complaint is their assertion that "the government … cannot

force vaccinations." (Doc. No. 1, ¶ 201) To the contrary, mandatory vaccinations—at the risk of criminal prosecution, no less—have been legal since 1905. *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905) (assessing the constitutional validity of a state-ordered smallpox vaccine mandate and concluding "we do not perceive that this legislation has invaded any right secured by the Federal Constitution"). In *Jacobson*, the Court reasoned that "the liberty secured by the Constitution of the United States … does not import an absolute right in each person to be … wholly freed from restraint," because "[s]ociety based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy." *Id*. at 26.

The Court need not rely solely on this 116-year precedent, for Judge Easterbrook (and other district courts) have affirmed its legal impact on COVID-19 vaccine mandates:

> Given *Jacobson v. Massachusetts* [citation omitted], which holds that a state may require all members of the public to be vaccinated against smallpox, ***there can't be a constitutional problem with vaccination*** against [COVID-19].

> . . . Plaintiffs invoke substantive due process. … [S]uch an argument depends on the existence of a fundamental right ingrained in the American legal tradition. Yet *Jacobson*, which sustained a criminal conviction for refusing to be vaccinated, shows that plaintiffs lack such a right. To the contrary, vaccination requirements, like other public-health measures, have been common in this nation.

*Klaassen*, 7 F.4th at 593 (emphasis added). In fact, Judge Easterbrook concluded that COVID-19 vaccine mandates present "easier" cases than the mandate at issue in *Jacobson*.[14] *Id*; *see also Harris v. Univ. of Massachusetts*, 2021 WL 3848012, at *5-6 (D. Mass. Aug. 27, 2021) (relying on *Jacobson* to deny preliminary injunction and dismiss challenge to vaccine mandate); *Norris v. Stanley*, 2021 WL 3891615, at *1 (W.D. Mich. Aug. 31, 2021) (denying temporary restraining order and concluding that *Jacobson* is "directly contradictory Supreme Court precedent" to

---

[14] On August 12, 2021, Justice Amy Coney Barrett of the United States Supreme Court denied an Emergency Application for a Writ of Injunction in the Seventh Circuit case regarding Indiana University's vaccine mandate. *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21a15.html.

plaintiff's claim that university vaccine mandate violated the Ninth and Fourteenth Amendments).

Further, Plaintiffs fail to sufficiently plead a state action theory capable of subjecting St. Elizabeth and SEP—both of whom are private entities—to constitutional scrutiny in the first place.[15]  It is difficult to discern what "state action" theories Plaintiffs are even pursuing, but one theory appears to be that St. Elizabeth and SEP are state actors because they receive a "massive amount of money from government via the taxpayer."  (Doc. No. 1, ¶ 10; *see also* ¶ 21, where Plaintiffs falsely allege that Defendants receive "the majority of their funding from the state and federal government in the form of Medicare and Medicaid payments")  However, it is well-established that "[t]he actions of a private entity do not become state action merely because the government provides substantial funding to the private party," including in the form of Medicare and Medicaid payments. *Crowder v. Conlan*, 740 F. 2d 447, 450 (6th Cir. 1984).  This theory fails.

Another theory appears to be that government regulation of hospitals constitutes state action.  (*See* Doc. No. 1, ¶ 11: alleging that the federal government's "health business" includes contracts and grants; ¶ 12: alleging that "[t]he federal government plays a large role in the public health system in the country," including with laws and regulations; and ¶ 571: "Government controls the hospitals.").  Presumably, this is an effort to establish the "nexus test" for state action. *See Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) ("[T]he nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.").  However, "[s]tate regulation of a private entity, even if it is 'extensive and detailed,' is not enough to support a finding of state action." *Crowder*, 740 F. 2d at 451 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)); *see*

---

[15]  This Court may take judicial notice that St. Elizabeth and SEP are private entities, because Courts can consider public records that "refute a plaintiff's claim" on a motion to dismiss.  *In re Omnicare, Inc. Sec. Litig.,* 769 F.3d 455, 466 (6th Cir. 2014).

*also Ellison*, 48 F.3d at 195 (summarizing a 1st Circuit case: "while the hospital was subject to limited state regulation, there did not exist a close enough nexus between the hospital and the state").  The nexus test fails as a matter of law.

Another state action theory appears to be that "the mandate does not come from the hospitals," because the "U.S. government and state government has ordered these vaccinations."  (Doc. No. 1, ¶ 199 and 201; *see also* ¶ 35, where Plaintiffs claim the Policy "comes directly from the mouth of Joe Biden")  This theory appears to be based on Plaintiffs' allegations that "Medicare and Medicaid have notified hospital administrators that reimbursement will be based on the number of staff vaccinated," and that "SEH knowingly was awarded government funding from if facilities 'mandated' vaccine [sic]." (Id., ¶ 34, 376)  Presumably, this is Plaintiffs' effort to establish the "state compulsion" or "joint action" tests for state action.  *Ellison*, 48 F.3d at 195 ("The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state."); *Tahfs v. Proctor*, 316 F.3d 584, 590-91 (6th Cir. 2003) (describing the "joint action" test as where "the offending party acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State").

However, the public record is clear that the federal government had not required St. Elizabeth or SEP to impose a vaccine mandate—nor had the government provided funding to impose a vaccine mandate—when St. Elizabeth and SEP announced the Policy on August 5, 2021. To the contrary, this Court may take judicial notice that President Biden just publicly announced on September 9 (*i.e.*, more than a month after the Policy was announced) that the federal government will be requiring vaccination for hospitals who treat patients on Medicare and

Medicaid.[16]  Therefore, the public record is clear that St. Elizabeth and SEP independently decided to require vaccination, without being compelled by the government or jointly participating with the government.  The "state compulsion" and "joint action" tests fail.

Finally, although it does not appear that any of Plaintiffs' allegations implicate the public function test, it is likewise not applicable.  The public function test applies when a private party "exercise[s] powers which are traditionally exclusively reserved to the state."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  Certainly the promulgation of conditions of employment by private employers is not a power reserved exclusively for government.  This test fails as well.

Because Plaintiffs have fundamentally failed to identify a constitutional violation and failed to establish that St. Elizabeth and SEP can be deemed state actors, Count V—as well as all other claims alleging a constitutional violation—fails as a matter of law.

### 6.    Criminal Coercion

The elements of criminal coercion are set forth in KRS 509.080, a Kentucky criminal statute which does not provide a civil remedy:

> (1) A person is guilty of criminal coercion when with intent to compel another person to engage in or refrain from conduct, he unlawfully threatens to: (a) Commit any crime; or (b) Accuse anyone of a crime; or (c) Expose any secret tending to subject any person to hatred, contempt or ridicule or to impair another's credit or business repute; or (d) Take or withhold action as an official or cause an official to take or withhold action.

KRS 509.080(1).  A review of Kentucky case law does not indicate that criminal coercion has ever been recognized as a civil cause of action. In fact, Kentucky courts are hesitant to "turn a statute describing a crime, with which [a defendant] not been charged, into a civil cause of action." *Porter*

---

[16] Courts may "take judicial notice of universally-recognized facts," *Rogers v. Webstaurant Store, Inc.*, 774 Fed.Appx. 278, 282 (6th Cir. 2019), and they may also consider public records that "refute a plaintiff's claim," *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).  President Biden's public press conference on September 9 can be found at https://www.youtube.com/watch?v=WvKCHtydVM4 (September 9, 2021).  The pertinent statements occur between 8:28 and 9:03.

*v. Cathey*, 2012 WL 2471107 at *8 (Ky. Ct. App. June 29, 2012) (refusing to recognize a private right of action for elder abuse when the plaintiff cited to KRS Chapter 209, the Kentucky Adult Protection Act, and claimed that the defendant's actions constituted a violation of said Act).

As additional grounds for dismissal, there are no allegations pled in the Complaint which would establish criminal coercion by St. Elizabeth or SEP.  Plaintiffs allege that "Defendants acted with the intent to compel Plaintiffs to receive the Covid-19 vaccine with the threat of both termination and the subsequent impairment to the Plaintiffs' reputations in the medical field," "threatening pressure of being a virtual outcast amongst their colleagues," and "the threat of being ostracized against its own physicians/employees." (Doc. No. 1 ¶ 482-485) These allegations do not establish that St. Elizabeth and SEP have committed a crime, accused anyone of committing a crime, exposed any secret tending to subject any person to hatred, contempt, or ridicule or to impair another's credit or business repute, or caused an official to take or withhold action.

Ultimately, the summary manner in which the Southern District of Texas disposed of the allegation of "coercion" (though that case did not involve a criminal coercion claim) is instructive:

> Although her claims fail as a matter of law, it is also necessary to clarify that Bridges has not been coerced. Bridges says that she is being forced to be injected with a vaccine or be fired. This is not coercion. Methodist is trying to do their business of saving lives without giving them the COVID-19 virus. It is a choice made to keep staff, patients, and their families safer. Bridges can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else.

*Bridges v. Houston Methodist Hosp.,* 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021).  As that court rightfully pointed out, making the COVID-19 vaccine a condition of employment does not rise to the level of coercion, particularly when Plaintiffs can choose to refuse the vaccine and work elsewhere. Plaintiffs' claim for criminal coercion, if such a claim even exists, should be dismissed.

### 7.      Fraud in the Concealment and Constructive Fraud

This claim is premised upon Plaintiffs' allegation that St. Elizabeth and SEP were "fully aware and/or recklessly ignored the inaccuracy of both the internal and external reporting regarding the Covid-19 numbers," which numbers include infection and death rates for vaccinated versus unvaccinated patients. (Doc. No. 1, ¶ 492)  Plaintiffs claim they have been "threatened, coerced, and pressured … not to discuss, disclose, or reveal evidence of the 'reality' of Covid-19[.]"  (Doc. No. 1, ¶ 494)

Fraud-based claims are subject to Federal Rule of Civil Procedure 9(b). This Rule requires a plaintiff to: "(1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) plead when and where the statements were made; and (4) explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir.2012). "[T]o meet the particularity requirement of Rule 9(b), a complaint of fraud must allege the time, place, and content of the misrepresentation on which [Plaintiffs] relied, the fraudulent scheme, the intent of the defendants, and the resulting injury." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Management, LLC*, 941 F. Supp. 2d 807, 821 (E.D. Ky. 2013).  Additionally, under Kentucky law, "when a complaint involves multiple defendants, each defendant's role must be particularized with respect to their alleged involvement in the fraud." *Id.* at 822. Plaintiffs have failed to meet any of these specific requirements.

Even if Plaintiffs had properly pled their claims under Rule 9, this claim is still subject to dismissal under Rule 12(b)(6). Under Kentucky law, "a fraudulent-concealment (fraud by omission) claim is grounded in a duty to disclose. In particular, the plaintiff must show 1) a duty to disclose the material fact at issue, 2) failure to disclose, 3) reliance, and 4) damages." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013) (quoting

*Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)). Kentucky recognizes four situations that may create a duty to disclose: 1) a fiduciary relationship; 2) a statutory requirement; 3) "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure"; and 4) "where one party to a contract has superior knowledge and is relied upon to disclose same." *Id*. Plaintiffs have failed to plead that St. Elizabeth and SEP even had a duty to disclose, much less that one of the four recognized situations creating such a duty exists. Moreover, Plaintiffs have failed to plead that they relied on any of the alleged misrepresentations and concealments. In fact, the entire basis of this lawsuit would make it appear that they have not relied on the alleged misrepresentations and concealments, which is why they refuse to get vaccinated. Therefore, they have failed to state a claim for fraudulent concealment.

Regarding the claim for constructive fraud, under Kentucky law "[c]onstructive fraud arises through some breach of a legal duty which, irrespective of moral guilt, the law would pronounce fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 762 (E.D. Ky. 2020). In other words, "[a] constructive fraud claim arises out of a material misrepresentation by a defendant in a fiduciary relationship with the plaintiff." *Cutter v. Ethicon, Inc.*, 2020 WL 109809, at *10 (E.D. Ky. Jan. 9, 2020). Plaintiffs have made no plausible showing that St. Elizabeth or SEP have ever misrepresented COVID-19 infection and death rates, and they have identified no evidence of a material misrepresentation made by St. Elizabeth or SEP, which is an essential element of their claim. Plaintiffs have further failed to show the existence of a fiduciary relationship between themselves and St. Elizabeth or SEP, a necessary element of a constructive fraud claim. The claim fails and must be dismissed.

### 8.    "Tortious Interference with Personal Healthcare"

"Tortious Interference with Personal Healthcare" is not a recognized cause of action in Kentucky, or apparently in any jurisdiction in the United States (as demonstrated by a Westlaw search for this term in all state and federal databases, which returned zero results). Plaintiffs cannot plausibly state a claim that does not exist.[17]

### 9.    Fraudulent Inducement

As discussed regarding Count VII above, fraud-based claims must be pled with particularity under Rule 9(b). Plaintiffs have likewise failed to plead this fraud-based claim with particularity, but even if they had done so, it is still subject to dismissal under Rule 12(b)(6).

"In Kentucky, a party claiming harm resulting from fraud in the inducement must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. App. 2010). Plaintiffs have not demonstrated that they can succeed on any of these elements, much less have they come forward with clear and convincing evidence in support of their claim. Plaintiffs have identified no evidence of a material misrepresentation which is false or made recklessly, or which St. Elizabeth or SEP made to induce them to act in any manner. Nor have Plaintiffs adequately explained how they have detrimentally relied upon any statement, much less a material misrepresentation, made by St. Elizabeth or SEP. Plaintiffs discuss the purported "potential serious risks associated with Covid vaccines" (Doc. No. 1, ¶ 502), which were allegedly concealed, but

---

[17] As shown in the Response to Plaintiffs' Motion, the factual basis of this putative claim—that St. Elizabeth and SEP "have unilaterally declared there will be no medical exemptions and have ordered their physician groups to NOT grant medical exemptions no matter the facts" (Doc. No. 1, ¶ 500)—is also demonstrably false. Therefore, the Court should not hesitate to dismiss this claim, which Plaintiffs made up anyway.

neither St. Elizabeth nor SEP are aware of any such purported "serious risks." Simply put, there are no such "serious risks" to conceal from Plaintiffs, for purposes of inducing them to act.

St. Elizabeth and SEP have implemented a lawful policy requiring as a condition of employment that their associates receive a COVID-19 vaccine, or a medical or religious exemption, by October 1, 2021. St. Elizabeth and SEP have been quite upfront with their associates with respect to this policy, including the potential consequences of not complying. Any associate may choose to comply or not comply, though if an associate chooses the latter, he or she will have to seek employment elsewhere. In this regard, there has been no concealment, no misrepresentation, and no deception whatsoever. Certainly, Plaintiffs have identified no actual facts or evidence to the contrary.

### 10.    Civil and Criminal Conspiracy

Kentucky law defines civil conspiracy as a "corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 648 (E.D. Ky. 2012). "Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Id.* According to the Kentucky Supreme Court, "in order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* at 650 (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky.1995)). "[T]here must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). "A conspiracy is inherently difficult to prove. Notwithstanding that difficulty,

the burden is on the party alleging that a conspiracy exists to establish each and every element of the claim in order to prevail." *James v. Wilson*, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002).

Plaintiffs' civil conspiracy claim is premised on the incorrect and unsupported notion that vaccine mandates are somehow unlawful acts, as they "see[k] to achieve an illegal goal." (Doc. No. 1, ¶ 511) As discussed herein in detail, it is settled law that vaccine policies implemented by private employers like St. Elizabeth and SEP are lawful. *See Jacobson*, 197 U.S. 11; *Bridges*, 2021 WL 2399994; and *Klaassen*, 2021 WL 3281209. Additionally, the federal government has recently announced vaccine requirements for all federal workers and contractors, as well as companies with over one hundred employees. Therefore, Plaintiffs have failed to allege the existence of an unlawful act, which is necessary for the survival of their civil conspiracy claim.

Regarding any claim for criminal conspiracy, the doctrine of concerted action has been applied in Kentucky to provide a civil cause of action for damages resulting from a criminal conspiracy. *Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. App. 1988).  The doctrine of concerted action is explained in the Restatement (Second) of Torts, Section 876 (1979), as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

Plaintiffs fail to allege sufficient facts to establish any of the foregoing elements for concerted action. Therefore, the claim related to criminal conspiracy also fails and must be dismissed.

### 11.    Civil Liability for Criminal Conduct

A citizen lacks a cognizable interest in the criminal prosecution of another, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and thus cannot assert a claim arising under a criminal

statute. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("This Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'"). Although KRS 446.070 authorizes a private claim against an alleged violator of a Kentucky state statute, it does not apply to violations of federal law. *Alderman v. Bradley*, 957 S.W.2d 264, 266-267 (Ky. App. 1997). The only cause of action for a violation of a Kentucky state statute alleged in Plaintiffs' Complaint is the meritless claim for criminal coercion under KRS 509.080. For the reasons stated above, Plaintiffs have failed to allege the elements of a claim for criminal coercion.

Elsewhere in their Complaint, Plaintiffs allege, without any further elaboration (let alone factual support), that St. Elizabeth and SEP have violated Kentucky statutes pertaining to insurance fraud, Medicaid fraud, false swearing, theft by deception, and theft of services.[18] (Doc. No. 1, ¶ 433) However, bare recitals of these alleged statutory violations, with no accompanying factual support, do not allow Plaintiffs to assert civil causes of action based upon these criminal statutes.

Further, many of the statutes themselves and resulting case law defeat Plaintiffs' claims. For example, there are no private rights of action under any of the listed federal law violations. *Jason v. Group Health Co-op. Inc.*, 530 Fed. Appx. 630, 631 (9th Cir. 2013) (no private right of action under 18 U.S.C. § 1347); *Whorton v. Cognitians, LLC*, 2019 WL 8917880, at *2 (6th Cir. Dec. 9, 2019) (citing *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997)) (no private right of action under 18 U.S.C. § 1035); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) (no private right of action under 18 U.S.C. §§ 1343 and 1341).

Thus, since Plaintiffs have failed to plausibly allege a violation of any of the

---

[18] Plaintiffs list the following statutes as the basis for "Crimes Committed by SEH and SEP": 18 U.S.C. § 1347, 18 U.S.C. § 1035, 18 U.S.C. § 1343, 18 U.S.C. § 1341, KRS 3047.40-020 [*sic*], KRS 205.8463, KRS 205.8465, KRS 205.8451-8453), KRS 523.040, KRS 514.040, and KRS 514.060. (Doc. No. 1, ¶ 433)

aforementioned statutes, Plaintiffs' claim for civil liability for criminal conduct must be dismissed.

### 12.   Violation of Public Policy Exception to At-Will Employment

Count XII alleges a claim for "Violation of At-Will Employment Doctrine/Public Policy Exception." St. Elizabeth and SEP presume Plaintiffs are attempting to bring a claim under Kentucky law for wrongful termination in violation of public policy. Notwithstanding the fact that none of the Plaintiffs have been terminated, this claim fails outright for numerous reasons.

In order to state a claim for wrongful termination in Kentucky, a plaintiff must show that (1) his or her discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law; and (2) the public policy is evidenced by a constitutional or statutory provision. *See Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). The public policy at issue must be evidenced by a provision within the Kentucky Constitution or a Kentucky statute, not a federal law. *Shrout v. The TFE Grp.,* 161 S.W.3d 351, 355 (Ky. App. 2005) (finding that Kentucky's wrongful discharge doctrine "extends a right of action only for the violation of a Kentucky statute or a constitutional provision," and upholding the dismissal of a claim for wrongful termination in violation of public policy brought under a federal law). Here, Plaintiffs base their wrongful termination claim on the federal EUA statute, 21 U.S.C. § 360bbb-3. (Doc. No. 1-1, ¶ 635) For this reason alone, this claim fails as a matter of law.

Additionally, numerous authorities have debunked the notion that employers cannot mandate a vaccine subject to EUA. The Southern District of Texas addressed this issue head-on, observing that the EUA statute applies only to the Secretary of Health and Human Services, not to private employers:

> Bridges has misconstrued this provision. It confers certain powers and responsibilities to the Secretary of Health and Human Services in an emergency. It neither expands nor restricts the responsibilities of private employers; in fact, it does not apply at all to private employers like the hospital in this case. It does not

confer a private opportunity to sue the government, employer, or worker. Bridges' claim that the injection requirement violates 21 U.S.C. § 360bbb-3 fails.
*Bridges*, 2021 WL 2399994 at *2; *see also* the July 2021 DOJ OLC Opinion,[19] which discusses this precise issue at length and reaches the same conclusion).  In sum, the EUA issue has no bearing on whether employers may require employees to receive the COVID-19 vaccine as a condition of employment.  The undisputed answer is that employers can.

Moreover, as this Court brought to Plaintiffs' Counsel's attention at the Status Conference held August 31, the FDA granted full approval to the Pfizer vaccine on August 23, 2021.  As a practical matter, this fact renders Plaintiffs' EUA argument moot, as St. Elizabeth and SEP associates have the option of receiving this vaccine which is not subject to EUA.

### 13.    Breach of Fiduciary Duty and Negligence

Plaintiffs allege a single cause of action for "breach of fiduciary duty and negligence," despite the fact these are fundamentally different claims. Due to the different elements required to plausibly plead these separate claims, St. Elizabeth and SEP addresses both claims in turn.

### A.    Breach of Fiduciary Duty

Plaintiffs allege that St. Elizabeth and SEP, as Plaintiffs' employers, owed them a fiduciary duty due to their supposed "positions of responsibility and trust."  (Doc. No. 1, ¶ 644)  A fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 485 (Ky. 1991); *See also Davis v. Davis*, 343 S.W. 3d 610, 617 (Ky. App. 2011) ("[A]n employee must be loyal and faithful to his

---

[19] *Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization*, 45 Op. O.L.C. ____ (July 6, 2021), *available at* https://www.justice.gov/olc/file/1415446/download

employer.").

Generally speaking, courts applying Kentucky law have found that a fiduciary relationship does not flow from an employer to an employee in an ordinary at-will employment relationship; there must be circumstances which transform the ordinary employment relationship into the special type of relationship described in *Steelvest*. *See Shibeshi v. Alice Lloyd College*, 2011 WL 4970781 , *4 (E.D. Ky. Oct. 19, 2011) ("Usually the [fiduciary] duty goes from the employee to employer, and Kentucky decisions reflect this reality"); *Arrowood v. Lyon*, 279 S.W.2d 801, 803 (Ky. 1955) ("But here we are presented with the question as to whether or not the bare relationship of employer and employee is sufficient to summon that duty. … In effect, the application of this rule depends upon the factual situation shown by the evidence. In this case, upon facts shown, the master commissioner and the court properly found that the rule had no application here.")

In *Dauley v. Hops of Bowling Green, Ltd.*, 2003 WL 1340013, *2 (Ky. App. Feb. 21, 2003), the court affirmed dismissal of an at-will employee's breach of fiduciary duty claim, stating, "We agree with the trial court that there was no evidence that [employee] 'enjoyed a special, protected relationship with [employer] or that [employer] undertook to act primarily for her benefit.'" The Eastern District of Kentucky has recognized the Kentucky Court of Appeals' holding in *Dauley*:

> The lone Kentucky decision discussing an employer's duty to an employee found that there was no fiduciary duty because the employee failed to provide enough evidence of a special relationship.

*Shibeshi*, 2011 WL 4970781 at *4 (dismissing with prejudice an employee's breach of fiduciary duty claims against an employer).

Plaintiffs have made a conclusory allegation that St. Elizabeth and SEP occupy a position of "responsibility and trust" with respect to Plaintiffs' employment, but they have not alleged any facts or identified any evidence in support of this bare allegation. (Doc. No. 1, ¶ 535) Under the

authorities cited above, Plaintiffs have failed to establish their ordinary at-will employment relationship with St. Elizabeth was a fiduciary relationship, and this claim must be dismissed.

### B.     Negligence

Plaintiffs' negligence claim is wholly unsupported by the averments within the Complaint. "In any negligence case, a plaintiff must prove the existence of a duty, breach of that duty, causation between the breach of duty and the plaintiff's injury and damages." *Hayes v. D.C.I. Properties-D KY, LLC*, 563 S.W.3d 619, 622 (Ky. 2018).  Courts have consistently held that, under Kentucky law, "[t]he question of duty presents an issue of law*." Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). When a court resolves a question of duty it is "essentially making a policy determination." *Id.* Thus, when a court concludes that the defendant did not owe a legal duty to the plaintiff, dismissal of a negligence claim is proper under Rule 12(b)(6).  *See Johnson v. United Parcel Service, Inc.*, 326 S.W.3d 812 (Ky. App. 2010).

District courts applying Kentucky law have held that, as a matter of law, employers do not owe at-will employees any duty. *See Harvey v. I.T.W., Inc.*, 672 F. Supp. 973, 977 (W.D. Ky. 1987) ("Since Harvey was terminable at will then no duty existed which could be breached."). Indeed, St. Elizabeth is free to terminate Plaintiffs "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983).

Here, Plaintiffs have alleged no purported legal duty other than a "fiduciary duty," which St. Elizabeth and SEP disprove above.  (Doc. No. 1, ¶ 535) Even if the Complaint properly alleged the existence of a duty owed to Plaintiffs by St. Elizabeth, Plaintiffs still would fail to state a claim for negligence.  As at-will employees, St. Elizabeth and SEP owed Plaintiffs no duty with respect to their continued employment.  Plaintiffs' negligence claim should be dismissed.

14.    **Duress**

Plaintiffs claim that St. Elizabeth and SEP are "forcing Plaintiffs to receive the Covid-19 vaccine under economic duress."  (Doc. No. 1, ¶ 543)  Under Kentucky law, "[D]uress…means such violence or threats made by the party or some person acting for or through him, or by his advice or counsel, as are calculated to produce on a person of ordinary intelligence a just fear of great injury to person."  *Wagner  v. Wagner*, 563 S.W. 3d 99, 104 (Ky. App. 2018).  Kentucky courts have recognized that "[i]t is not duress to threaten to do what one has a legal right to do, nor is it duress to threaten to take any measure authorized by law and circumstances of the case."  *Redmon v. McDaniel*, 540 S.W.2d 870, 872 (Ky. 1976).

Plaintiffs cannot state a plausible duress claim.  First, as discussed throughout this Motion, there is nothing unlawful about requiring vaccination against COVID-19.  St. Elizabeth and SEP have the legal right to implement the Policy, therefore there is no duress.  Second, the Policy does not deprive Plaintiffs of their free will.  Plaintiffs may freely choose to be vaccinated, to apply for an exemption, or to find employment elsewhere.  Finally, to the extent Plaintiffs are alleging these choices are "illusory" because they cannot afford to lose their jobs, such a theory fails under Kentucky law. "While financial difficulties may make one more susceptible to duress, they are insufficient to constitute civil duress." *Keeling v. Jefferson Cty. Bd. of Educ*., 2003 WL 1860539, at *5 (Ky. App. Apr. 11, 2003) (affirming dismissal of duress claim where plaintiff alleged she agreed to a settlement only because "I cannot afford to be without a job").

Furthermore, as explained by the District Court for the Southern District of Texas: "Bridges can freely choose to accept or refuse a COVID-19 vaccine; however, *if she refuses, she will simply need to work somewhere else*…Every employment includes limits on the worker's behavior in

exchange for his remuneration. ***That is all part of the bargain***." *Bridges*, 2021 WL 2399994 at *2 (emphasis added).  Additionally, "[a] plaintiff asserting a claim for economic duress, must show something more than a difficult bargaining position or the pressure of financial circumstance." *Mik v. Fed. Home Loan Mortgage Corp.*, 2017 WL 903469, *8 (W.D. Ky. Mar. 7, 2017).  Plaintiffs' duress claim fails on its face.

### 15.     Declaratory Relief

Count XV seeks a declaration that the Policy violates the EUA statute, and thus the doctrine of federal preemption invalidates the Policy.  (Doc. No. 1, ¶ 670)  Plaintiffs have not stated a plausible claim for declaratory relief.  First, the Pfizer vaccine was fully approved on August 23, 2021, therefore the EUA issue is moot.  Second, even when all vaccines were subject to EUA, the Department of Justice Office of Legal Counsel, *supra*, concluded that the EUA statute does not prohibit public or private entities from imposing vaccination requirements.  There is no basis for any finding that the doctrine of federal preemption in any way invalidates the Policy.

### 16.     Injunctive Relief

Count XVI is a claim for the relief that is currently at issue on Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction.  (Doc. No. 7)  For the reasons set forth in Defendants' Response, Plaintiffs are not entitled to this relief because they cannot show a strong likelihood of success on the merits of any of their claims; they fail to demonstrate irreparable harm; the requested injunction will cause substantial harm to many people; and the equities clearly favor the Policy in the context of a deadly pandemic.  This claim should be dismissed.

### 17.     Class Action

Count XVII is not a claim for relief, but merely requests class certification for all employees who do not want to be vaccinated. (Doc. No. 1, ¶ 556) The Complaint's "formulaic

recitation" of the elements of a class action is largely a copy-and-paste of Rule 23, therefore it fails to establish the requisite elements for class certification. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.")

Since Plaintiffs have failed to sufficiently plead facts to establish the basis for class certification, St. Elizabeth and SEP will not spend the Court's resources outlining in detail how Plaintiffs fail to substantively meet the requirements of Rule 23. Notwithstanding, "[a]lthough Rule 23 does not explicitly set forth this requirement, one necessary element is that there must be a class." *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 335 (E.D. Ky. 2002). A class action plaintiff must establish a "definable class." Wright & Miller, Fed. Prac. & Proc. (2d ed.), Civil § § 1759. A proposed class cannot meet the definability requirement if membership in the class hinges on individualized determinations for each prospective member. *E.g., Gevedon*, 212 F.R.D. at 336. Here, although the prospective members of the class may all wish to avoid the vaccine, their reasons for doing so all involve individualized determinations. Paragraphs 78 through 112 of the Complaint list a multitude of various reasons the proposed class members are allegedly relying upon to make their decision to not get vaccinated.

The Sixth Circuit addressed a similar scenario and reversed the trial court's grant of class certification in *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). That case concerned a proposed class of persons allegedly harmed by an implanted medical device. *Id.* at 1076-77. In evaluating whether the proposed class could meet the Rule 23 requirements, the Sixth Circuit carefully considered the existence of individualized medical questions among prospective class members. *Id.* at 1085-86. The Court then found that "each plaintiff ha[d] a unique

complaint, and each receive[d] different information and assurances from his treating physician." *Id.* at 1085. The Sixth Circuit then concluded that "[i]n this situation, the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant only to a particular plaintiff." *Id.* Likewise, this case involves individualized questions among all prospective class members and should not be permitted to proceed as a class action.

### 18.    Intentional Infliction of Emotional Distress/Outrage

In order to state a claim for IIED, a plaintiff must allege the following: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress suffered; and (4) the emotional distress was severe. *Fischer v. Fletcher,* 500 F. Supp. 3d 621 (E.D. Ky. 2020); *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).  When analyzing IIED claims, the Court must make the initial determination of "whether the conduct complained of can reasonably be regarded as so extreme and outrageous as to permit recovery." *Youngblood v. City of Paducah*, 2016 WL 2643030, at *5 (W.D. Ky. May 6, 2016) (quoting *Whittington v. Whittington*, 766 S.W.2d 73, 74 (Ky. App. 1989)). Moreover, claims for intentional infliction of emotional distress lie only where the actor "had the specific purpose of causing emotional distress … or intended a specific conduct and knew or should have known that it would cause emotional distress rather than a personal (physical) injury[.]" *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012).

As a preliminary matter, it is unclear what aspect of Defendants' conduct is alleged to have been extreme and outrageous.  Plaintiffs' baldly assert that "Defendants' behavior is outrageous and offends against the generally accepted standards of morality" (*see* Doc. No. 1, ¶ 567), but that clearly does not provide fair notice of the grounds upon which Plaintiffs' IIED claim rests. *See*

FRCP 8(a)(2). Assuming *arguendo* that Plaintiffs will aver, at least in part, that termination of employees for failure to conform with the Policy serves as the basis for the IIED claim, this argument fails outright. St. Elizabeth has not terminated anyone for failure to conform with the Policy to date. And even if employees are eventually terminated, it is well-established that "an employee's termination… does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F. 3d 365 (6th Cir. 1999). Thus, even if Plaintiffs had satisfied the pleading standard, their claim for IIED would fail.

Additionally, Plaintiffs fail to allege a specific intent to cause emotional distress. Even if the Plaintiffs had demonstrated such an intent, any allegation for IIED would still fail as the Policy is facially aimed at protecting health and safety—not causing anyone emotional distress.  Plaintiffs cannot plausibly allege that requiring a vaccine in the midst of an unprecedented public health crisis offends generally accepted standards of decency and morality.  To the contrary, considering that vaccine mandates have been legal for over a century, and that the COVID-19 vaccines have been almost universally declared safe and effective, arguably it would have been indecent and immoral for St. Elizabeth and SEP ***not*** to mandate vaccination.

"The issue of whether conduct is so outrageous as to permit recovery is a question of law for the court to decide." *Goodman v. Goldberg & Simpson, P.S.C.*, 323 S.W.3d 740, 746 (Ky. App. 2009).  The Court can summarily conclude that Plaintiffs' allegations do not even remotely implicate an outrage claim.

### 19.     Violation of the Unconstitutional Conditions Doctrine and the Fourteenth Amendment's Right to Due Process

The Unconstitutional Conditions Doctrine is premised upon the principle that "a ***state actor*** cannot constitutionally condition the receipt of a benefit on an agreement to refrain from exercising one's constitutional rights." *Ostergren v. Frick*, 856 Fed. Appx. 562, 571 (6th Cir. 2021) (emphasis

added). This doctrine "prevents the government from denying a benefit on the basis of a person's constitutionally protected speech or associations." *Libertarian Party of Ohio v. Wilhem*, 988 F. 3d 274, 279 (6th Cir. 2021) (emphasis added). Courts have recognized that "whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mngt. Dist.*, 570 U.S. 595, 606 (2013).

This background highlights the requisite elements for a court to apply the unconstitutional conditions doctrine. Most importantly, the doctrine applies to state actors, not private entities like St. Elizabeth and SEP. Additionally, there must be a constitutional right infringed upon or burdened by the state actor, which Plaintiffs cannot show. Finally, the state actor must hold out some sort of benefit (e.g., funding, tax exemption, etc.) that coerces the individual to forego their constitutionally protected rights. None of these elements can be satisfied.

First, as explained above (pp. 29-31), St. Elizabeth is not a state actor.[20] Next, Plaintiffs have failed to demonstrate that the Policy violates Plaintiffs' constitutional rights. Finally, Plaintiffs have failed to demonstrate that St. Elizabeth is withholding some benefit which would coerce individuals to forego constitutional rights. This claim fails as a matter of law.[21]

---

[20] Count XIX of the Complaint cites extensively to *Speiser v. Randall*, 357 U.S. 513 (1958). (Doc. No. 1, ¶ 576-583) However, Plaintiffs' reliance on *Speiser* is wholly misplaced. In *Speiser*, the Plaintiffs brought claims against state actors – the Tax Assessor for the State of California and the City and County of San Francisco – thereby justifying application of the unconstitutional conditions doctrine. Plaintiffs have failed to demonstrate how Defendants are state actors as required for application of the unconstitutional conditions doctrine. In an effort to cloak this fatality, Plaintiffs argue that the "Commonwealth of Kentucky similarly possess no compelling interest that could justify *its defective Policy*." (Doc. No. 1-1, ¶ 581). Whether the Commonwealth has a mandatory vaccination policy has no bearing on the merits of Defendants' Policy.

[21] Under this claim, Plaintiffs also use the phrase "procedural due process violation." (Doc. No. 1, ¶ 582) To the extent Plaintiffs are trying to pursue a procedural due process claim, it fails as a matter of law. *Harris*, 2021 WL 3848012, at *5 (dismissing procedural due process claim asserted against a university COVID-19 vaccine mandate, because plaintiffs seeking to challenge a prospective, generally applicable rule are "not entitled to process above and beyond the notice provided by the enactment and publication of the Vaccine Policy itself").

### 20.      Violation of the Supremacy Clause

Plaintiffs allege the Policy violates Section 564 of the EUA statute (21 U.S.C. 360bbb-3) and is thus preempted by federal law. (Doc. No 1, ¶ 711-715)  This claim likewise fails for several reasons.  First, the Pfizer vaccine was fully approved by the FDA on August 23, 2021, therefore the application of the EUA statute to the Policy is moot.  Second, even when all of the vaccines were subject to EUA, the DOJ OLC concluded that the EUA statute does not prohibit public or private entities from imposing vaccination requirements, as explained *supra*.  Plaintiffs, of course, take issue with this analysis (Doc. No. 1, ¶ 597-610), but they do not demonstrate why the Court should disregard this persuasive authority.  They also fail to demonstrate why any issue concerning EUA status has relevance in light of the fully-approved Pfizer vaccine.  This claim should must be dismissed as moot under Article III, Section 2, Clause 1 of the U.S. Constitution.

### 21.      Violation of the Nuremberg Code of 1947

This claim alleges the Policy violates the Nuremberg Code's prohibition on human experimentation without voluntary consent.  (Doc. No. 1, ¶ 734)  It fails for several reasons.  First, "there is no viable claim for violations of the Nuremberg Code." *Ward v. Schaefer,* 2018 WL 1096829, fn. 5 (D. Mass. Feb. 27, 2018). Second, "[t]he Nuremberg Code does not apply" to a private employer. *Bridges*, 2021 WL 2399994, at *2. Third, even beyond those dispositive reasons, this Court should recognize the absurdity of this claim, as did the Southern District of Texas:

> … [Plaintiff] likens the threat of termination in this case to forced medical experimentation during the Holocaust. … Equating the injection requirement to medical experimentation in concentration camps is reprehensible. Nazi doctors conducted medical experiments on victims that caused pain, mutilation, permanent disability, and in many cases, death.

*Id*.  This claim must be dismissed.

22. **28 U.S.C. § 1983 Claim**

Plaintiffs cannot establish either element of a § 1983 claim, which requires a constitutional violation (which fails under *Jacobson*) by a state actor (which neither St. Elizabeth nor SEP qualify as). Moreover, this count is "duplicative" of Plaintiffs' other constitutional claims, because § 1983 "is not itself a source of substantive rights, but rather a means by which litigants complaining of a violation of a constitutional right may bring their claim before a court." *Harris*, 2021 WL 3848012, at fn. 1. Therefore, this is not an independent claim for relief, and it must be dismissed.

23. **Attorney's Fees**

Plaintiffs fail to allege any basis for attorney's fees, but ultimately this is a request for a remedy, not a substantive cause of action. This claim fails because all other claims alleged in the Complaint also fail, and Plaintiffs are entitled to no remedy or relief whatsoever.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Mark D. Guilfoyle
Mark D. Guilfoyle (KBA #27625)
Nicholas C. Birkenhauer (KBA #91901)
Christopher B. Markus (KBA #92613)
Michael J. Enzweiler (KBA #96989)
Dressman Benzinger LaVelle PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
(859) 341-1881 (T)
(859) 341-1469 (F)
mguilfoyle@dbllaw.com
nbirkenhauer@dbllaw.com
cmarkus@dbllaw.com

menzweiler@dbllaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on the 14th day of September, 2021, the foregoing was served via the Court's electronic filing system upon:

A. Dominick Romeo
Deters Law
5247 Madison Pike
Independence, KY 41051

/s/ Mark D. Guilfoyle